# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| FLORIDA DEMOCRATIC PARTY,<br><br>Plaintiff,<br><br>v.<br><br>KEN DETZNER, in his official capacity as Secretary of State of the State of Florida,<br><br>Defendant. | CASE NO. |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE

Pursuant to Federal Rule of Civil Procedure 65, Plaintiff Florida Democratic Party (the "Party") respectfully submits the following memorandum of law in support of its emergency motion for a temporary restraining order and order to show cause why a temporary restraining order and/or preliminary injunction should not issue. Specifically, the Party moves for an order requiring the Secretary of State Ken Detzner (the "Secretary") to extend Florida's voter registration deadline from October 9, 2018 to October 16, 2018. Although the Secretary has issued a one-day extension in certain, limited circumstances for some—but not all—voters, that "solution" is not sufficient to protect the fundamental voting rights of Floridians.

The Secretary's failure to adequately extend the deadline violates the First and Fourteenth Amendments to the U.S. Constitution and the Equal Protection Clause.

## I.   NATURE OF THE CASE

In the absence of relief from this Court, thousands (and quite likely tens of thousands) of Floridians will be unable to vote in the November 6, 2018 general election for reasons beyond their control. Hurricane Michael is bearing down on the Florida Panhandle today. Yesterday, Governor Rick Scott warned that "Hurricane Michael is forecast to be the most destructive storm to hit the Florida Panhandle in decades," and urged Floridians to "take this very seriously."[1] Vast numbers of people heeded the Governor's warning to take the storm seriously, and life in affected areas—including the provision of government services—has come to a halt.

To be eligible to vote in the upcoming general election, Floridians must register to vote by today—Tuesday, October 9.  Late on October 8, 2018, the Secretary issued Directive 2018-03 ("Directive"), which granted a limited one-day extension for voters whose local registration offices are closed on October 9 and who submit paper voter registration applications.[2] The extension date varies from jurisdiction to jurisdiction; the Directive specifies that it applies "the next day that

---

[1] *Gov. Scott: Michael Could Bring "Total Devastation" to Parts of FL; Mandatory Evacuations Ordered Along Panhandle*, Weather.com (Oct. 8, 2018) https://weather.com/storms/hurricane/news/2018-10-07-florida-hurricane-emergency (last visited Oct. 8, 2018).

[2] Directive 2018-03, https://www.flgov.com/wp-content/uploads/2018/10/Directive-2018-03.pdf (last visited Oct. 8, 2018).

[the Supervisor of Election's] office is reopened."[3] Voters whose local registration offices are open on October 9, voters who wish to postmark their applications, and voters who register online are still subject to the original October 9 deadline.

This limited, confusing, and inconsistent solution is not sufficient to adequately protect the voting rights of Floridians. As a threshold matter, the "solution" is not equally available to all Floridians: prospective voters who evacuate may not be able to make it back to their home county in time to hand in a paper application to their local office on the single extra day of registration the Directive allows, whereas prospective voters in counties outside the evacuation zone may have an easier time accessing the registration office. Moreover, the Directive fails to offer any solution to voters who may attempt to register by mail: because the Directive does not extend the deadline by which a voter may postmark an application, voters who evacuate on Tuesday and are unable to return to their county on the one extra day of registration that the Directive allows will be unable to register and vote. Further, a prospective voter who evacuated likewise cannot register online after October 9, but a counterpart who stayed in spite of an evacuation order may still register in person at his or her local office if it is open. Additionally, voters may be affected by the storm even if their local office remains open on October 9—the Directive makes no provision for these voters. Moreover, the Directive ignores that

---

[3] *Id.*

voters may be affected by the storm even if their local office remains open on October 9. Similarly, the Directive's limited application to paper registrations accepted in person does not acknowledge that internet and power outages may undermine the availability of online registration across the state, or that voters who wish to mail their registrations are subject to the original October 9 postmark deadline. Simply put, a limited, one-day extension that applies arbitrarily from county-to-county across Florida is no solution at all.

The Secretary's failure to adequately extend the registration deadline will disenfranchise thousands of voters. Registrations typically surge in the final days before the registration deadline. The importance of the final days before the deadline was further underscored in 2016 when a court-ordered weeklong extension of the registration deadline (to accommodate disruption from Hurricane Matthew) resulted in an additional 108,000 voter registrations.[4]

The Secretary can point to no countervailing state interest that justifies his refusal to extend the registration deadline. Floridians should not be forced to forfeit their voting rights as a penalty for simply living in the path of Hurricane Michael. The Court should therefore order the Secretary to extend the voter registration deadline until October 16, 2018.

---

[4] Miami Herald, *Surge of post-Hurricane Matthew voters breaks 100,000 mark*, http://miamiherald.typepad.com/nakedpolitics/2016/10/surge-of-post-hurricane-voters-breaks-100000-mark.html (last visited Oct. 8, 2018).

## II.     STATEMENT OF FACTS

### A.     Florida's Voter Registration Deadline Is October 9.

To be eligible to vote in the upcoming November 6, 2018 general election, prospective voters must register to vote by October 9—today. *See id.* §§ 97.053, 97.055, 97.0555. To register, Floridians can use the online voter registration system, or complete a paper Voter Registration Application and deliver it, either in person or by mail, to the office of the County Supervisor of Elections, the Florida Division of Elections, or a third-party voter registration agency. *See id.*[5]

Florida's Online Voter Registration ("OVR") system allows eligible Florida residents to register to vote or update an existing registration record online. Fla. Stat. 97.0525. To use the OVR system, however, residents must have a Florida driver's license or state identification card, and must provide the last four digits of their social security number. Those who do not have a Florida driver's license, state identification card, or social security number may still use the OVR website to complete a voter registration application, but must print, sign, and deliver it by mail or in-person to their county Supervisor of Elections office. Florida Department of State, Division of Elections, RegistertoVoteFlorida.gov, *Frequently Asked Questions*, https://dos.myflorida.com/media/698341/ovr-faq-english.pdf. Further,

---

[5] In Florida, an organization that has registered as a third party voter registration organization may collect completed voter registration applications from voters and deliver those applications to county election officials on the voters' behalf. *See id.* § 97.0575(1).

Florida residents who are participants in the Florida Attorney General's Address Confidentiality Program, which protect, inter alia, victims of domestic violence, sexual harassment, and stalking, are instructed not to use the OVR, but to instead contact their county Supervisor of Elections to register to vote. *See* https://registertovoteflorida.gov/en/Registration/Index.

In addition, in the last 24 hours, at least some Florida residents attempting to register to vote or update their voter registration online at RegistertoVoteFlorida.gov experienced error messages that prevented them from completing a voter registration transaction. The error, which was reported by users of social media[6] and documented on video by a Florida internet developer,[7] appears after the registrant attempts to submit their personal identification information. It is currently unknown how many registrants have been prevented from registering due to the error.

---

[6] *See, e.g.*, https://mobile.twitter.com/beckster305/status/1049472930101547009; https://mobile.twitter.com/ChewbaccasMom/status/1049473897933037570; https://mobile.twitter.com/_saraicruz/status/1049476051884277761; https://mobile.twitter.com/oneluckybaxter/status/1049466329462394880; https://mobile.twitter.com/notorious_grace/status/1049436478525198337; https://mobile.twitter.com/tcw8848/status/1049470351749668864; https://mobile.twitter.com/AlexTheDood/status/1049459785974906880;

[7] *See* Manifest Interactive, *Florida Voting Website, Busted Again*, *available at* https://vimeo.com/294051342 (Oct. 8, 2018). Earlier this year, the same internet developer in question previously alerted the Secretary to an error in the online voter registration system, which led the Secretary to make adjustments to the system. *See* Alexandra Glorioso, State fixes voter registration problem with simple updates, *Politico.com*, https://www.politico.com/states/florida/story/2018/07/23/state-fixes-voter-registration-problem-with-simple-updates-522370 (July 23, 2018).

Further compounding the confusion, are Florida's varied rules regarding when a registration application has been timely received. Completed paper registration applications that are submitted in person are considered delivered at the time the applications are actually delivered to the elections official. *See* Fla. Admin. Code. Ann. r. 1S-2.042(7)(a). Applications delivered by mail, in contrast, are considered delivered as of the date they are postmarked, if a clear postmark is present on the mailing envelope. *See id.* If no clear postmark is present, then the date of delivery for mailed applications is the actual date of receipt. *See id.*

Interest in an impending election reaches its zenith as Election Day approaches. Thus, Florida typically sees a surge in voter registration in the days leading up to the voter registration deadline.

### B.   Hurricane Michael Has Caused Disruption of Services.

Hurricane Michael has caused widespread disruption in the days leading to the October 9 voter registration deadline. On October 8, Governor Scott requested that President Trump declare a pre-landfall emergency for the state.[8] On the same day, Governor Scott declared a state of emergency in 35 Florida counties.[9] Meanwhile, he deployed 500 Florida National Guard Members and ordered another

---

[8] RICK SCOTT, FLGOV.COM, https://www.flgov.com/2018/10/08/gov-scott-requests-pre-landfall-disaster-declaration-extends-emergency-order/ (last visited Oct. 8, 2018).
[9] RICK SCOTT, EXECUTIVE ORDER 18-277, https://www.flgov.com/wp-content/uploads/2018/10/SLT-BIZHUB18100810270.pdf (last visited Oct. 8, 2018).

7

5,000 to be ready to deploy.[10] As of the evening of October 8, evacuations have been announced in Bay, Calhoun, Dixie, Franklin, Gadsden, Gulf, Hernando, Jackson, Jefferson, Leon, Liberty, Okaloosa, Pasco, Santa Rosa, Taylor, and Wakulla counties.[11]

### C. The Secretary Orders an Inadequate and Haphazard Single-Day Extension.

On Monday, October 8, the Florida Democratic Party and the Lawyers' Committee for Civil Rights Under Law asked the Secretary and Governor Scott to extend the voter registration deadline. That night, the Secretary issued Directive 2018-03 ("Directive"), which granted a shifting one-day extension for voters whose local registration offices are closed on October 9 and who submit paper voter registration applications.[12] But this limited, confusing, and inconsistent solution cannot adequately protect the voting rights of Floridians.

Even if prospective voters risk their safety to venture into the storm and register today, they will likely encounter shuttered government offices and unattended postboxes.[13] Likewise, third party voter registration organizations that

---

[10] *Gov. Scott: Michael Could Bring 'Total Devastation' to Parts of FL; Mandatory Evacuations Ordered Along Panhandle*, Weather.com (Oct. 8, 2018) https://weather.com/storms/hurricane/news/2018-10-07-florida-hurricane-emergency (last visited Oct. 8, 2018).

[11] *Evacuation Orders*, https://www.floridadisaster.org/info (last visited Oct. 8, 2018)

[12] Directive 2018-03, https://www.flgov.com/wp-content/uploads/2018/10/Directive-2018-03.pdf (last visited Oct. 8, 2018).

[13] Voters who live in areas unaffected by the storm may still face hurdles to registration if their forms are to be mailed to the Department of Elections or another office that lies in an affected area.

8

have gathered and are currently in possession of voter registration applications are unable to deliver those applications to election officials due to the storm's clear and immediate threat. Under these extraordinary circumstances, the Secretary's refusal to adequately extend the voter registration deadline violates the fundamental voting rights of Floridians.

Unfortunately, this is not the first time that the courts have been asked to intervene because the Secretary has refused to adequately protect voting rights in light of a major hurricane. In *Fla. Democratic Party v. Scott*, 215 F. Supp. 3d 1250, 1257 (N.D. Fla. 2016) (*Scott*), the Party brought a nearly identical suit against the Secretary and Governor Scott seeking a registration extension in light of Hurricane Matthew. The court issued an injunction extending the statewide registration deadline by one week, *id.*, and noting that "[t]hese voters have already had their lives (and, quite possibly, their homes) turned upside down by Hurricane Matthew"; and "deserve a break, especially one that is mandated by the United States Constitution." *Id.* at 1258.

## III.  ARGUMENT

### A.  Preliminary Injunction Standard

"A party seeking a preliminary injunction bears the burden of establishing its entitlement to relief." *Scott v. Roberts*, 612 F.3d 1279, 1289-90 (11th Cir. 2010). "To obtain such relief, the moving party must show (1) a substantial likelihood of

success on the merits; (2) that it will suffer irreparable injury unless the injunction is issued; (3) that the threatened injury outweighs possible harm that the injunction may cause the opposing party; and (4) that the injunction would not disserve the public interest." *GeorgiaCarry.org v. U.S. Army Corps of Eng'rs*, 788 F.3d 1318, 1322 (11th Cir. 2015).

### B. Plaintiff is Likely to Succeed on the Merits.

#### 1. The Secretary's Actions Impose A Severe Burden on the Right to Vote Without Advancing Any State Interest.

"No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined." *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964). Accordingly, election laws burdening that fundamental right are subject to searching judicial scrutiny. *Scott*, 215 F. Supp. 3d at 1256-57.

In *Anderson v. Celebrezze*, 460 U.S. 780 (1983) and *Burdick v. Takushi*, 504 U.S. 428 (1992), the Supreme Court laid out a "flexible standard" to resolve constitutional challenges to state election laws that burden voting rights. *See Anderson*, 460 U.S. at 789. "A court considering a challenge to a state election law must weigh the character and magnitude of the asserted injury to the rights . . . that the plaintiff seeks to vindicate against the precise interests put forward by the State as justifications for the burden imposed by its rule, taking into consideration

the extent to which those interests make it necessary to burden the plaintiff's rights." *Burdick*, 504 U.S. at 433-34 (quotation marks and citation omitted). When a regulation subjects the right to vote to a "severe" restriction, the restriction "must be narrowly drawn to advance a state interest of compelling importance." *Norman v. Reed*, 502 U.S. 279, 280 (1992). Less severe burdens remain subject to balancing. But "[h]owever slight" the burden on the right to vote "may appear," "it must be justified by relevant and legitimate state interests 'sufficiently weighty to justify the limitation.'" *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 191 (2008) (plurality) (quoting *Norman*, 502 U.S. at 288-89).

Here, if the October 9 voter registration deadline is not extended for a full week, then thousands—potentially *tens* of thousands—of Floridians will be completely disenfranchised. Many have been required to evacuate ahead of Hurricane Michael, numerous government offices where they could register have been closed, and internet and postal services through which could have registered are likely to be disrupted. Thus, many Floridians who would have registered to vote during the final days of registration will be unable to do so. Even the specific class of voters who are granted a one-day extension under the Secretary's Directive must still return home in time, correctly ascertain when their local office is re-opening, and pick their way through storm-ravaged streets to election offices in order to register.

Further, the Party is directly harmed because it has been forced to curtail its typical voter registration drives due to disruptions from the storm. The Party typically works with over 100 volunteers and staffers to perform voter outreach in the days leading up to the registration deadline. This year, hundreds of voter registration shifts will go unfilled due to evacuations and other storm accommodations. As a result, prospective voters who must now navigate this confusing and shifting set of hyper-local election deadlines will also need to do so with less assistance.

The Secretary's refusal to adequately extend the October 9 voter registration deadline will result in voters' automatic and total disenfranchisement. That sort of categorical denial of the right to vote plainly amounts to a severe burden on the franchise. *See, e.g.*, *Ayers-Schaffner v. DiStefano*, 860 F. Supp. 918, 921 (D.R.I.), aff'd, 37 F.3d 726 (1st Cir. 1994) ("A complete denial of the right to vote is a restriction of the severest kind."); *see also NEOCH*, 696 F.3d at 585-87 ("summary" and "automatic" nature of disqualification of right-place, wrong-precinct ballots suggests burden on right to vote is "substantial").

In *Scott*, the court determined that "Hurricane Matthew not only forced many [] voters to evacuate the state, but also foreclosed the only methods of registering to vote" and "amounts to a severe burden on the right to vote." *Scott*, 215 F. Supp. 3d at 1257. So too, here; Hurricane Michael will not only disrupt the lives of Floridians,

but will also impede them from voting. This burden is unquestionably severe. *Id.* The Directive does not meaningfully mitigate these harms; it merely carves out a small slice of population and offers them a thin reed of hope that they may be able to register in time if they can navigate both the storm and the confusing terms of the Directive.

Given the likelihood of total disenfranchisement for thousands of Floridians, the Secretary must come forward with an interest that is "sufficiently weighty" to justify enforcing the October 9 deadline and the Directive, and show that their official actions are narrowly drawn to further that interest. *Norman*, 502 U.S. at 288-89. He cannot do so. Like in *Scott*, "[i]n no way could Defendants argue that there is some sort of limitation that requires them to burden the constitutional rights of aspiring eligible voters." *Id.* at 1257.

Simply put, the Secretary has not and cannot offer any valid reason for refusing to extend the registration deadline by one additional week under these circumstances, let alone a reason sufficient to justify disenfranchising thousands of Floridians. Plaintiff is therefore likely to prevail on Count I of its Complaint.

## 2. The Directive Violates the Equal Protection Clause.

The Secretary's Directive violates the Equal Protection Clause by treating similarly situated voters differently. Specifically, the Directive unfairly and arbitrarily favors some voters over others depending on geographic location and

13

chosen method of registration. The Directive grants a one-day extension if, and only if, (1) a prospective voter's local registration office is closed on October 9, *and* (2) the voter registers in person on the designated extension date using a paper application. Prospective voters across the state who wish to register online, who must evacuate on the October 9 and attempt to register by mail after that date, or whose local offices remained open on October 9, are not granted any extension—regardless of any difficult circumstances caused by the storm. The difference in treatment is unfair and arbitrary. The Directive therefore violates the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution.

As the Supreme Court has explained, "[t]he right to vote is protected in more than the initial allocation of the franchise. Equal protection applies as well to the manner of its exercise. Having once granted the right to vote on equal terms, the State may not, *by later arbitrary and disparate treatment, value one person's vote over that of another*." *Bush v. Gore*, 531 U.S. 98, 104-05 (2000) (emphasis added). But that is precisely what the Secretary proposes to do here: enforce the October 9 deadline in some instances but not others, resulting in precisely the kind of "arbitrary and disparate treatment" the Supreme Court warned against.

Here again, Plaintiff's claim is evaluated under the flexible standard of the *Anderson-Burdick* test. *See Ohio Democratic Party v. Husted*, No. 16-3561, 2016 WL 4437605, at *4 (6th Cir. Aug. 23, 2016). The Secretary's failure to adequately

extend the voter registration deadline to account for the disruption on all Florida voters by Hurricane Michael is an arbitrary and irrational distinction that will result in the disenfranchisement of thousands of voters. It cannot be justified by the minor administrative inconvenience (assuming any such inconvenience even exists) of extending the statewide October 9 deadline to October 16. Plaintiff is therefore likely to prevail on the merits.

      **C.    Plaintiff Satisfies The Other Preliminary Injunction Factors.**

            **1.    An Injunction Is Necessary to Avoid Irreparable Harm.**

There is no genuine dispute that the harm threatened here is irreparable. If Florida voters are prevented from registering as a result of Hurricane Michael, there is no way to cure that disenfranchisement. "This isn't golf: there are no mulligans. Once the voter registration deadline passes, 'there can be no do-over and no redress.'" *Scott*, 215 F. Supp. 3d at 1258 (citing *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014)). Thus, courts have long recognized that when an "abridgment to the voters' constitutional right to vote" is imminent, "irreparable harm is presumed and no further showing of injury need be made." *Touchston v. McDermott*, 234 F.3d 1133, 1158-59 (11th Cir. 2000); *see also Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012) ("*OFA*") (abridgement of right to vote constitutes irreparable harm); *Council of Alt. Political Parties v.*

*Hooks*, 121 F.3d 876 (3d Cir. 1997) (same); *Williams v. Salerno*, 792 F.2d 323, 326 (2d Cir. 1986) (same).

### 2. The Balance of Hardships Weighs in Favor of an Injunction.

It is equally clear that the balance of hardships favors Plaintiff and weighs in favor of issuing emergency injunctive relief. Beyond minor administrative inconvenience, it is difficult to see how the Secretary or the State of Florida would suffer any harm if they were required to continue accepting registration applications for additional time.

On the other side of the ledger, if deadline is not extended for a full week, then thousands of voters in a critical swing state risk total disenfranchisement in a hotly contested election. Under those circumstances, equity plainly favors Plaintiff. *Scott*, 215 F. Supp. 3d at 1258 ("it would be nonsensical to prioritize [administrative] deadlines over the right to vote"); *see also Taylor v. Louisiana*, 419 U.S. 522, 535 (1975) (stating "administrative convenience" cannot justify the deprivation of a constitutional right).

In circumstances similar to those here, Florida has adjusted election and voter registration procedures in the past without engendering electoral chaos. In 2016, the voter registration deadline was extended for a full week. *Scott*, 215 F. Supp. 3d at 1256. Other states have taken similar action in the face of impending emergencies. Over the past few days, South Carolina extended their registration deadline by ten

16

days to accommodate destruction from Hurricane Florence. *Extensions Announced*, WBTV (Oct. 7, 2018) https://www.wbtv.com/2018/10/07/extension-announced-south-carolina-voter-registration-deadline/. In 2005, in the wake of Hurricane Katrina, Governor Blanco of Louisiana used executive powers to postpone several elections (and their respective qualifying periods). *See* La. Exec. Order No. KBB 2005-36, *available at* http://www.doa.louisiana.gov/osr/other/kbb06-02.htm. More recently, in 2012, Hurricane Sandy struck the Mid-Atlantic coast days before the general election. To preserve the rights of voters affected by Hurricane Sandy, New Jersey, New York, and Connecticut postponed deadlines and took other common-sense measures to prevent disenfranchisement.[14] There is no good reason why Florida cannot and should not follow suit.

### 3.     An Injunction Is in The Public Interest.

The public has a paramount interest in elections where every eligible resident may cast an effective vote. *See Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349, 1355 (11th Cir. 2005); *see also LOWV*, 769 F.3d at 248 ("[t]he public

---

[14] In New Jersey, by executive order, any voter who was displaced was designated an "overseas voter" and permitted to submit a mail-in ballot. Directive Regarding Email Voting and Mail-in Ballots for Displaced Voters, *available at* http://nj.gov/state/elections/2012-results/directive-email-voting.pdf. The order also extended the deadline for those mail-in ballots. *Id.* In Connecticut, the October 30 voter registration deadline was postponed until November 1, a mere five days before the general election. In New York, any voter registered in a federally-declared disaster was allowed to vote by affidavit at any poll site in New York. *Governor Cuomo Signs Executive Order to Facilitate Voting for New Yorkers Who Were Affected by Hurricane Sandy*, New York State (Nov. 5, 2012), https://www.governor.ny.gov/news/governor-cuomo-signs-executive-order-facilitate-voting-new-yorkers-who-were-affected-hurricane (last visited Oct. 8, 2018).

has a 'strong interest in exercising the fundamental political right to vote.'" (quoting *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006)); *OFA*, 697 F.3d at 437 ("The public interest . . . favors permitting as many qualified voters to vote as possible."). The affected voters are those whose lives have already been interrupted (or worse) by Hurricane Michael. Under the circumstances, an injunction allowing these voters to participate in the upcoming election would only promote the public interest. The Constitution guarantees the right of voters "to cast their ballots and have them counted." *United States v. Classic*, 313 U.S. 299, 315 (1941). And "[c]ementing unconstitutional obstacles to "that right strike at the heart of representative government." *Scott*, 215 F. Supp. 3d at 1256 (quoting *Reynolds v. Sims*, 377 U.S. 533, 555 (1964).

## IV. CONCLUSION

For the reasons stated herein, Plaintiff respectfully requests that the Court enter a preliminary injunction requiring the Secretary, his officers, employees, and agents, all persons acting in active concert or participation with the Secretary, or under his supervision, direction, or control, and all other persons within the scope of Federal Rule of Civil Procedure 65, to extend the statewide deadline[15] for delivery of voter registration applications to October 16.

---

[15] There is no question that "[the hurricane's] effects are not circumscribed to one region of the state;" rather, it affects "jobs, families, and more across the state." *Scott*, 215 F. Supp. 3d at 1256. Statewide relief is therefore appropriate. *Id.*

Dated: October 9, 2018                    Respectfully submitted,

*/s/     Mark Herron*
Mark Herron
Fl. Bar. No. 199737
mherron@lawfla.com
**MESSER CAPARELLO**
2618 Centennial Place
Tallahassee, FL 32308
Telephone:  (850) 222-0720
Facsimile:  (850) 558-0659

and

Marc E. Elias
D.C. Bar No. 44207
(Admitted *Pro Hac Vice*)
MElias@perkinscoie.com
**PERKINS COIE LLP**
700 Thirteenth Street, N.W., Suite 600
Washington, D.C. 20005-3960
Telephone:  (202) 654-6200
Facsimile:  (202) 654-6211

*Counsel for Plaintiff*

# **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(F), I HEREBY CERTIFY that the enclosed Memorandum of Law of Plaintiff Florida Democratic Party contains approximately 6,000 words, which is less than the total words permitted by the rules of court. Counsel relies on the word count of the computer program used to prepare this memorandum.

Dated: October 9, 2018

/s/     *Mark Herron*
Mark Herron

*Counsel for Plaintiff*